1  MICHAEL A. NICHOLS, #54223
   ATTORNEY AT LAW
2  510 South Mathilda Avenue, Suite 8
   Sunnyvale, California 94086
3  (408) 733-9221

4  Attorney for Mark Zelinsky

5

       IN THE UNITED STATES DISTRICT COURT

6

       FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  UNITED STATES OF AMERICA,              ) **NO. CR 07-00614**
                                          )
9                          Plaintiff,     ) **Sentencing Memorandum**
                                          ) **On Behalf of**
10                                        ) **Mark Charles Zelinsky**
       vs                                 )
11                                        )
                                          ) **Date: March 24, 2008**
12 MARK CHARLES ZELINSKY,                 ) **Time: 1:30 p.m.**
                          Defendant.      ) **Judge: Hon. James Ware**
13                                        )
   _____)

14

15

16      Through counsel, Mark Charles Zelinsky  files the following Sentencing Memorandum

17 setting fourth all factors that the Court should consider in determining what type and length of

18 sentence is sufficient, but not greater than necessary, to comply with the statutory directives set

   fourth in 18 U.S.C. § 3553(a).

19

20 ## Sentencing Under *Booker*

21

22

23      On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely

24 v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to

   the Federal Sentencing Guidelines.  United States v. Booker, 125 S. Ct. 738, 756 (2005).  Given the

25

26 mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the

27 sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant

   to the Federal Sentencing Guidelines" in the cases before the Court.  Id. At 751.  Accordingly,

28

1  reaffirming its holding in <u>Apprendi</u>, the Court concluded that

2

3       [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be

4       admitted by the defendant or proved to a jury beyond a reasonable doubt.

5

6  <u>Id.</u> at 756.

7

8       Based on this conclusion, the Court further found those provisions of the federal Sentencing

9  Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon

10  the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment

11  holding. <u>Booker</u>, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions,

12  "mak[ing] the Guidelines effectively advisory." <u>Id.</u> at 757. Thus, under <u>Booker</u>, sentencing courts

13  must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §

14  3553(a).

15       The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence

16  sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

17  Section3553(a)(2) states that such purposes are:

18

19      (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

20

21      (B)    to afford adequate deterrence to criminal conduct;

22      (C)    to protect the public from further crimes of the defendant; and

23      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

24       In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts

25  to consider the following factors:

26

27     1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1);

28     2) "the kinds of sentences available" (§ 3553(a)(3);

   3) "the need to avoid unwarranted sentence disparities among defendants with similar records

1   who have been found guilty of similar conduct" (§ 3553(a)(6); and
2   4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7)).

3       Other statutory sections also give the district court direction in sentencing.  Under 18 U.S.C.
4   § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining
5   whether and to what extent imprisonment is appropriate based on the Section 3553 (a) factors, the
6   judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting
7   correction and rehabilitation" (emphasis added).

8

9       Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the
10  background, character, and conduct of [the defendant] which a court of the United States may receive
11  and consider for the purpose of imposing an appropriate sentence" (emphasis added).  This statutory
12  language certainly overrides the (now-advisory) policy statements in Part H of the sentencing
13  guidelines, which list as "not ordinarily relevant" to the sentencing a variety of factors such as the
14  defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol
15  dependence, and lack of guidance as a youth.  *See* U.S.S.G. § 5H1.

16

17      The directives of <u>Booker</u> and § 3553(a) make clear that courts may no longer uncritically
18  apply the guidelines.  Such an approach would be "inconsistent with the holdings of the merits
19  majority in <u>Booker</u>, rejecting mandatory guideline sentences based on judicial fact-finding, and the
20  remedial majority in Booker, directing courts to consider all of the §3553(a) factors, many of which
21  the guidelines either reject or ignore." <u>United States v. Ranum</u>, 353 F. Supp. 2d. 984, 985-86 (E.D.
22  Wisc. Jan 19, 2005) (Adelman, J.).

23

24      Justice Scalia explains the point well in his dissent from <u>Booker's</u> remedial holding:

25      Thus, logic compels the conclusion that the sentencing judge, after considering the recited
26      factors (including the guidelines), has full discretion, as full as what he possessed before the
        Act was passed, to sentence anywhere within the statutory range.  If the majority thought
27      otherwise - if it thought the Guidelines not only had to be 'considered' (as the amputated
        statute requires) but had generally to be followed - its opinion would surely say so.

28

<u>Booker</u>, 125 S. Ct. at 791 (Scalia, J., dissenting in part).  Likewise, if the remedial majority thought

1  the guidelines had to be given "heavy weight," its opinion would have said so.  The remedial

2  majority clearly understood that giving any special weight to the guideline range relative to the other

3  Section 3553(a) factors would violate the Sixth Amendment.

4

5      In its most recent pronouncement on the subject, the U.S. Supreme Court in Gall v. United

6  States, NO. 06-7949 (Dec. 10, 2007) the Court held that sentences outside the guidelines range do

7  not need to be justified by "extraordinary circumstances", as some courts have held.  Instead, the

8  sentencing courts' reasoning only need be compelling enough to justify the sentence.

9

10          **Application of the Statutory Sentencing Factors
                to the Facts of this Case**

11

12      In the present case, the following factors must be considered when determining what type and

13  length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

14

15  **1.    The Nature and circumstances of the Offense and the History and
            Characteristics of the Offender**

16

17      **(a) Nature and Circumstances of Offense**

18  This Attorney had the opportunity to view the photos, which are the subject matter of this

19  prosecution, along with psychologist Dr. John Brady, federal investigator Sammy Martin, and United

20  States Attorney Joseph Fazioli.  The photos are fairly summed up by Dr. Brady as follows:

21

22      1.    "The selected images and websites appear in most cases to be randomly chosen."

23      2.    "There are approximately an equal number of adult and minor photographic subjects.

24            The ages in certain scenes varies or is difficult to rate sexual maturation.  Some of the

25            depicted subjects appear fully clothed with neutral poses."

26

27      3.    "No clear potential victimization pattern emerges from the photo sampling, i.e. no

28

4

narrowing down or conscious intent to specifically target or focus on a particular subset such as pre-pubescent females."

4.   "No plans were made to arrange for personal contacts of visitation with any of the females depicted on the websites.  This is consistent with his psychological profile demonstrating that he is not a pedophile, but mainly pathologically voyeuristic."

5.   "There is no noticeable increase in sexual image tolerance or degree of satiation depicted with his selection of sexual photos."

6.   "Apparently, all of the images depicted in Mr. Zelinsky's search are freely accessible to the public at no cost as a kind of "teaser invitation."  Mr. Zelinsky did not advance his search in to what could have been potentially more provocative scenes by accessing a pay for view mode, perhaps seeking more prurient or lewd type images, as might be the case with a pedophilic patient."  (See exhibit "A" attached herein)

What this case does not involve is any type of trafficking in the material involving the sexual exploitation of a minor, nor does it include transportation, shipping, or advertising material involving the sexual exploitation of a minor, nor does it involve the possessing material involving the sexual exploitation of a minor with the intent to traffic.  What this case does involve is the random viewing of child pornography along with adult pornography by someone accessing free photos of both types of pornography on a random basis.  The majority of the photos themselves are solitary type photos of single posed girls.  It is submitted that viewing free photos of this type does not increase "any demand" inasmuch as it is available for any one to view without purchasing the photos themselves.

### (b) History and Characteristics of the Defendant

The relevant factors concerning Mr. Zelinsky include the following:

1. He is age 57 and he has no criminal record.

2. He is the sole supporter of his aged mother, Evelyn Zelinsky. She depends upon him for her financial, physical, and emotional needs. (See exhibit "B" attached hereto).

3. He obtained a BA degree in Physics from San Francisco State University in 1979.

4. He was employed at Ames NASA for 28 years prior to his termination. His job reviews would indicate that he was a good worker and respected by his supervisors.

5. He is a heterosexual man, and according to Dr. John Brady clinical psychologist, he is not a pedophile.

6. He has entered into an early plea, admitted wrongdoing, cooperated with the authorities from the outset, and he has expressed extreme remorse.

7. Dr. John Brady's psychological assessment (see exhibit "A" attached hereto) of the defendant, following extensive counseling, would indicate the following:

   A. He does not preset any present or future potential for sexual acting out behaviors.

   B. He further presents with "low psychopathy quotient that is positively correlated with non-sexual dangerousness."

   C. He has no record of any type of sexual deviation.

   D. "Mr. Zelinsky's psychological profile is representative of a passive, dependant, and sad person with an arrested phsychosocial developmental stage orientation, not a person who is a potential sex offender given to acting out."

   E. "He does not appear to be on a continuum,...going from less dangerous sexual behavior (viewing pornography on the Internet) to more serious behavior, i.e. pedophilia."

   F. He does not meet the profile of a potential Internet pornography offender.

   G. "His journey into the world of pornography appears to have been exploratory and is not viewed as irreversibly compulsive."

H.    "Mr. Zelinsky...has not developed an increased tolerance and sought out more Internet pornography as evidenced by his reluctance to proceed beyond the free stage of viewing."

I.    "For the purposes of this psychological assessment, Mr. Zelinsky's personality is not consistent with an addictive personality and, by inference, that of an Internet pornography-addictive person or a sexual violent potential offender measured on the SVR-20 scale."

J.    "He fully accepts responsibility for his present legal conundrum. This is the most favorable prognostic sign that psychotherapy will be successful in changing his behavior.  He has a desire to change; therefore, he can change and decondition himself away from the deleterious temptations offered via Internet pornography sites."

K.    Finally, Dr. Brady recommends the following:

1.  "Increasing his self-image, self-esteem, and self-reliance."

2. "Deconditioning his inappropriate inclination towards viewing unrealistic and immature electronic transmitted sexual images."

3.  "Focusing on Mr. Zelinsky's resocialization process as well as reduction of his loneliness patterning."

L.    Dr. Brady concludes that "...it does appear that Mr. Zelinsky has a minimal probability to recidivate.  Federal prison confinement for this first-time offender who accepts total responsibility for his unlawful action, has no prior arrest history, and has tested as non-violent, thus representing a minimal future danger, would seem to serve no useful end except retribution.  A more treatment-oriented alternative including psychotherapy with a long-term

7

probationary status could be offered to this sincere, contrite, middle-aged man."

8.  He has obtained the testing services of psychiatrist, Dr. Ronnie Leith. (See exhibit "C" attached hereto).

**2.      The Need for the Sentence Imposed To Promote Certain Statutory Objectives:**

**(a) to reflect the seriousness of the offense, promote respect for the law, and provide, just punishment for the offense**

Certainly, we would agree that a punishment for this type of offense is necessary to promote respect for the law, and provide just punishment for the offense.  However, we do not agree that any guideline type of sentence would provide a deterrent inasmuch as the defendant did not attempt to purchase child pornography, distribute or engage with others in viewing such pornography.  What the defendant did  was view child pornography that is already readily available on the Internet via free samples or "teaser" type thumbnails.  The defendant did not focus on one type of pornography versus another nor did he organize the pornography into any separate type of conduct, but rather went from one website to another where he viewed both adult and child pornography.  Obviously, the defendant is in need of various educational training as the most effective manner in reiterating the fact that this is inappropriate conduct.  He does not pose any risk to the public's safety and he accepted full    responsibility for his crime.

**3.      The Sentence Guidelines**

**The guideline range in this case overstates the defendant's criminality and does not adequately reflect the defendant's conduct, personal history, and psychological profile.**

1.      The defendant is seen as a naive, isolated individual who viewed pornography as "just photos."  It is only now that he fully appreciates the great wrongdoing of his conduct.

2.      He viewed "free sites" only and never attempted to purchase any child pornography photos.  Therefore, he did not become a part of any child pornography network that

is in business for monetary gain which would increase the demand for purveyors of such photos to continue the exploitation of children for profit.

3. He did not distinguish between adult pornography and child pornography. He viewed all the photos as simply "porn."

4. He is not a pedophile.

5. He provides the primary financial and emotional support for his 80 year old mother. They live together in a house they purchased in San Mateo County.

6. The guideline calculations for the two referenced S and M photos overstates the defendant's conduct. The defendant did not seek out and obtain this sort of photo but rather came to them as he "surfed" from one website to the next. The photos themselves were within the websites but were not of an S and M primary focus.

7. He viewed the pornography over a period of months when he would become bored at work.. The arbitrary number of 600 photos has little bearing to his interest in child pornography, but reflects a length of time he viewed both child and adult pornography.

**Proposed Statement of Reasons for a Sentence Below Guideline Range.**

1. The defendant, age 57, has no criminal history.

2. The defendant is the primary support of his aged mother.

3. The defendant has an excellent work history.

4. The defendant is not a sophisticated collector of child pornography.

5. The defendant has sought and benefitted from psychiatric counseling.

6. The defendant has admitted wrongdoing at an early stage of the criminal proceedings; he was cooperative with the government investigator; and he has been honest and forthright with everyone involved from the outset of this case.

7. The defendant does not appear to be a danger to society.

8.    The defendant is remorseful and he understands that what he did was wrong.

9.    The defendant is seen as a good candidate for probation.

**Suggested Appropriate Sentence for Mr. Zelinsky**

The appropriate sentence might include a halfway house correctional component along with a period of home confinement and volunteer work as supervised by the probation department.

**Conclusion**

For the forgoing reasons, Mr. Zelinsky respectfully submits that a sentence as suggested herein is sufficient, but not greater than necessary, to comply with the statutory directives set forth in   18    U.S.C.Section   3553(a).

Respectfully submitted,

Dated: _____

_____
MICHAEL A. NICHOLS
Attorney   for   Defendant