



EXHIBIT __A__

November 3, 2007

Michael A. Nichols
Attorney at Law
510 South Mathilda Avenue, Suite 8
Sunnyvale, CA 94086

RE: **Mark Zelinsky**

Dear Mr. Nichols:

### INTRODUCTION TO CASE PRESENTATION

Pursuant to your request, your client, Mr. Mark Zelinsky, was seen at the Milpitas Counseling Center on October 10, 2007. Mr. Zelinsky was seen for a comprehensive psychodiagnostic assessment, was on time, and was accompanied by his mother, Evelyn, who provided valuable background information concerning Mr. Zelinsky and his case. He attended to all the testing tasks presented him and the mental status examination.

Mr. Zelinsky understood that a complete written report would be sent to his attorney, Mr. Nichols, prior to an upcoming federal court date. Mr. Zelinsky was quite candid concerning the criminal charge being brought against him, and he comprehends the seriousness of this charge. Mr. Zelinsky showed a sincere interest in the testing results, and his greatest fear is that he will be sent to prison.

The goals of this psychological testing and mental status interview were:
1. Globally assess Mr. Zelinsky's personality.
2. Help determine why this intelligent man (NASA engineer) would engage in downloading of pornographic images while at his workplace. Because of this

illegal behavior, Mr. Zelinsky has lost his job/career and now faces a serious federal charge and perhaps confinement.

3. Determine whether Mr. Zelinsky's psychological testing profile is similar to that of a potential sex offender or pedophile using comparison data.
4. Help assess Mr. Zelinsky's future probable dangerousness and potential to recidivate and for internet pornography violations.
5. Develop an appropriate course of treatment for Mr. Zelinsky.
6. Rule in or rule out the presence of lying, faking, dissimilation, or malingering. In all criminal cases (up to 50%), there is the possibility that the defendant will attempt to fake the testing responses. In order to rule in or rule out this factor, the SIMS and other psychological tests were examined.

## IDENTIFYING INFORMATION

Dates of Testing: October 10, 2007

Client's Name: Mark Zelinsky

Date of Birth: December 12, 1950

Birthplace: Harrisburg, Pennsylvania

Age: 56

Current Residence: 111 Cabrillo Way, San Bruno, CA 94066

Place of Examination: Milpitas Counseling Center

Dates of Examination: October 10, 2007

Date of Report: November 3, 2007

Prior Arrests: None

Criminal Charges: Felony child pornographic possession

Prior Psychiatric Treatment: None

## INFORMATION REVIEWED

1. Federal indictment, U.S. District Court, Northern California, in violation of Title 18 USC, Section 2252(a)(4)(5), possession of matters containing any visual depiction of a minor engaging in sexually explicit conduct.
2. Removal from federal service, April 6, 2006.
3. National Center for Missing and Exploited Children.
4. Child Identification Reports (various).

Mr. Zelinsky
*Psychological Evaluation – Dr. John C. Brady III*

2

5. NASA, Office of Inspector General, Office of Investigation, Briefing for Assistant U.S. Attorney, March 28, 2006, with attachment.
6. Office of Inspector General, referral to NASA management.
7. NASA, Public Policy Directive, compliance is mandatory, May 25, 2005.
8. NASA, Document, Possession of Child Pornography, March 10, 2006.
9. Interview with Mr. Zelinsky by Special Agent Sammy Martin, November 7, 2005.
10. Full Case Recommendation, NASA, November 8, 2005.
11. Review of additional network logs, NASA, 25 pps.
12. Interview of Mr. Michael Hom, Networking and Communication, Ames Research Center.
13. Case discovery materials, U.S. v. Zelinsky; from: U.S. Department of Justice, to: Mr. Mike Nichols.
14. Developmental and Forensic Pediatrics, Dr. Sharon Cooper, Evidence Analysis, May 12, 2007 in coordination with Fayetteville, N.C. Police.
15. Personal viewing of depicted child pornographic images, Ames Research Center, with Mr. Zelinsky's attorney, Mr. Mike Nichols, November 20, 2007.

## PSYCHOLOGICAL TESTS PRESENTED

1. Basic Personality Inventory (BPI). This well-researched psychological questionnaire (1989) includes comparative profiles for a variety of criminal offenders, including diagnostic information concerning a sex offender, and uses clinical sub-scales similar to those of the MCMI and MMPI.
2. Thematic Apperception Test (TAT). (Murray) This test requires the patient to interpret a number of different pictures by telling a story. This instrument, over time, has been a validated method to detect acting-out and aggression and is based on a distinct personality theory.
3. MMPI-2. Wide spectrum personality test, revised and upgraded in 1989.
4. Draw a Person (DAP). (Machover) This instrument helps identify behavioral problems including both adolescents/adults. One of the most used projective tests since its development (1949).
5. Locus of Control (LOC) (Rotter). This test determines whether or not the patient is driven by internal or external psychological forces.
6. Incomplete Sentence Blank (ISB). (Rotter) This test involves a stimulus statement, i.e., "I feel …" to be completed by the patient. General personality, conflicts and problem areas detected.

7. SIMS Test. This is a structural interview checking for faking or malingering symptoms.
8. Mini Mental State Examination (MMSE). A standardized mental status examination for the evaluation of the cognitive mental state (2000).
9. SVR-20. This instrument isolates information related to sexual contact with non-consenting persons and examines factors of psychosocial adjustment. (1997).

## BACKGROUND AND PERSONAL HISTORY

Mr. Mark Zelinksy is a 56-year-old male presently charged with a federal internet pornography crime. Mr. Zelinsky was seen at the Milpitas Counseling Center accompanied by his mother, Evelyn.

Mr. Zelinsky reports that he was born in Harrisburg, Pennsylvania and moved to California in approximately 1955. Mr. Zelinsky lives in San Bruno, California with his mother. Mr. Zelinsky has no prior arrest record known to this examiner and no prior psychiatric treatment. Mr. Zelinsky has two brothers, one older and one younger, and one sister, approximately age 46, who lives in Oregon. Mr. Zelinsky has lived the preponderance of his life with his mother. Mr. Zelinsky reports that his father was deceased in 1982, and he enjoyed a favorable relationship with him. Mr. Zelinsky is religious, being of the Jewish faith.

Mr. Zelinsky attained a Bachelor of Science degree and an Associate's degree in physics at San Francisco State University in 1979. As stated, Mr. Zelinsky is an intelligent person who had a devoted career as an engineer at Ames Research Center.

Mr. Zelinsky has worked for 28 years at Ames until he was terminated because of the instant offense. Mr. Zelinsky is presently single and has no conspicuous dating history known to this examiner. Mr. Zelinsky states that he is heterosexual but inactive. He engages in reading, gardening, landscaping, and enjoys board games with his relatives. Mr. Zelinsky has not fathered any children and is not presently taking any psychoactive medication for psychological reasons. Mr. Zelinsky has been hospitalized for a bladder enlargement in 2005, and apparently there were no subsequent medical difficulties.

**DSM-IV TR CLINICAL DIAGNOSES**

| | | |
|---|---|---|
| Axis I: | 799.9 | Pending diagnostic information |
| Axis II: | 301.6 | Dependent personality |
| | 301.82 | Avoidant personality |
| Axis III: | None | |
| Axis IV: | Profound social alienation, infantalization, inadequate social connectiveness, poor self concept | |
| Axis V: | Global Assessment Functioning = 60, representing impaired social interaction, some depression, but no suicidal ideations. | |

**PSYCHOLOGICAL TEST RESULTS AND MENTAL STATUS EVALUATION**

Mr. Zelinsky presented himself for psychological testing and demonstrated adequate memory recall for recent, remote and intermediate behavior. Mr. Zelinsky's appearance was satisfactory, and he maintained positive eye contact throughout the interview. Mr. Zelinsky looks his stated age. He was oriented in person, place and time, not having any abnormal gait nor was posturing evidenced. Mr. Zelinsky is not seen as hyperactive, and no psychomotor retardation was noticed. Mr. Zelinsky's mood was appreciably dysphoric and somewhat depressed as well as sad during the testing. His speech was clear yet pressured and slow. Mr. Zelinsky's thoughts appeared to be organized, and no tangential associations were noted. Mr. Zelinsky did not show any gross signs of brain dysfunction, and his concentration was adequate; he focused on the testing during the session. Mr. Zelinsky shows a positive outcome on the MMSE which follows. Mr. Zelinsky was comfortable concerning his psychosexual history and even discussed some information in the presence of his mother. Mr. Zelinsky states that he is presently heterosexual and has very limited contact with women in a carnal sense. Mr. Zelinsky does not present any prior sex offense arrests. Mr. Zelinsky's sex fantasy ideation imaging seem to be questionable, as he has turned to the internet to access illicit images.

Mr. Zelinsky's attention and calculation abilities as measured on the MMSE are adequate, and his attention span is also adequate. Mr. Zelinsky's calculation ability was

superior, and his comprehension of everyday facts is also within high normal limits. Mr. Zelinsky's graphomotor functioning is also adequate.

One goal of this psychological testing was to assess faking, dissimilation, distortion and malingering. In order to measure these variables, a number of psychological tests were used. Because Mr. Zelinsky is facing serious criminal charges, there is a probability that he will attempt to fake bad, i.e., "I want to convince the doctor that I'm really crazy," or conversely, "Why am I here? There's nothing wrong with me." Mr. Zelinsky's BPI validity score which measures the degree of honesty falls within normal limits. The MMPI-2 is an instrument having additional validity scales when compared with the BPI and is analyzed using eight scales, each tapping a different aspect of lying/faking. His variable response and true response inconsistency scores do not indicate the intent to distort the test results. Randomly responding and symptom enhancement are ruled out. Mr. Zelinsky's F scale (generally recognized as the fake scale) indicates that he is not providing unlikely answers to the test, and distortion is minimized.

Mr. Zelinsky was also given the SIMS which is a specific test to measure malingering. Mr. Zelinsky's SIMS test yields six measures of faking or areas where a defendant/patient may attempt to distort the image he or she presents. The following are the SIMS results. Mr. Zelinsky does not attempt to distort his memory function nor is there an attempt to present with psychotic symptoms. His emotional scale and neurologic impairment scales fall within normal limits. In the opinion of the examiner, based on these tests, clinical signs of malingering have been ruled out.

Mr. Zelinsky is clinically diagnosed with a dependent personality disorder, DSM-IV TR 301.6. It is apparent when looking at his psychosocial history that Mr. Zelinsky has remained almost totally attached to his mother for the preponderance of his 56 years. In this regard, his mother, as stated, even attended the interview section of this psychological assessment. Mrs. Zelinsky also supplied insightful anecdotal facts pertinent to her son's life. Mrs. Zelinsky was not psychologically assessed, although she is viewed as very sweet and sincere yet totally overprotective of her son. Mr. Zelinsky, on the other

hand, who is the subject of this analysis, appears to be non-assertive and non-dominant. He furthermore has strong attachment ties to his mother and has never broken free; hence, at age 56, he remains unmarried and living at home with her. Mr. Zelinsky's MMPI-2 social introversion scale at 60 indicates that he is withdrawn emotionally and overcontrolled. Mr. Zelinsky is shy, reticent and lacks self confidence, trends that are consistent with the second diagnosis of avoidant personality disorder discussed below.

Mr. Zelinsky's overall dependent personality correlates well with his BPI alienation score at 72. This elevated score is consistent with this diagnosis, and further evidence is his psychological withdrawal and dependence. Again, Mr. Zelinsky's dependence has been fostered by his mother since childhood. His dependent personality is characterized by his unrealistic fears that he cannot take care of himself. Mr. Zelinsky has difficulty in making everyday decisions as well as allowing others to assume responsibility for his decisions. He feels somewhat uncomfortable, helpless, and withdraws from other people. Mr. Zelinsky has difficulty in initiating social contacts or initiating extrafamilial contacts.

Mr. Zelinsky over the years has had deep feelings concerning abandonment. His fears of abandonment helped him develop a concomitant fear of reaching out to others, especially to women generally and women in an intimate sense specifically. Developmentally, Mr. Zelinsky was never able to cultivate adequate social skills to approach women; thus, he avoids them or at best maintains superficial contacts with them. It is hypothesized here that Mr. Zelinsky has long used fantasy and vicarious projection as a way to satisfy his underlying and sublimated sexual demands. In fact, Mr. Zelinsky's entire repertoire of information regarding women has been vicarious and second-hand. None of this is, so far, illegal or unlawful but only immature and not evolved as it should be for a man of his chronological age. Moreover, Mr. Zelinsky probably has had very little or no first-hand sexual experience with women. Therefore, his attraction to the internet represents incomplete, secondary and probably unrealistic notions of what sex is really all about and represents an immature voyeuristic strategy. His psychosexual developmental stage really is more consistent with that of a teenager than an adult male. Mr. Zelinsky's own statement to the effect that he "has desired girls but just never knew how to go about it" is

indicative of his social developmental retardation. It seems clear that Mr. Zelinsky has had and maintained adequate heterosexual sex object choice; yet, Mr. Zelinsky has had almost no direct sexual contact with women. Again, this is not unlawful or illegal behavior, just disadvantageous to him.

**COMPARISON SCORES PROFILE**

Mr. Zelinsky's psychological test results were specifically compared with those of a sex offender on the BPI and the SVR-20 and more generally on the other psychological tests presented. His BPI impulse expression scale at 58 is 27 points lower than that of a sexual offender's at 85. The impulse control scale is a key factor in the diagnosis of a sexual offender. In a similar manner, his MMPI-2 psychopathic deviation scale is sufficiently suppressed to indicate that Mr. Zelinsky is capable of controlling his sexual impulses. He is a person who, in addition to being able to control his impulses including sexual drives, knows the difference between right and wrong. Moreover, during the interview, Mr. Zelinsky was contrite and remorseful for downloading sexual images from internet websites. This examiner had the opportunity to sample the websites Mr. Zelinsky viewed. Subsequent to personally viewing 1000+ images taken from Mr. Zalinsky's computer, the following observations are proffered:

1. The selected images and websites appear in most cases to be randomly chosen.
2. There are approximately an equal number of adult and minor photographic subjects. The ages in certain scenes varies or is difficult to rate sexual maturation. Some of the depicted subjects appear fully clothed with neutral poses.
3. No clear potential victimization pattern emerges from the photo sampling, i.e. no narrowing down or conscious intent to specifically target or focus on a particular subset such as pre-pubescent females.
4. No plans were made to arrange for personal contacts of visitation with any of the females depicted on the websites. This is consistent with his psychological profile demonstrating that he is not a pedophile, but mainly pathologically voyeuristic.
5. There is no noticeable increase in sexual image tolerance or degree of satiation depicted with his selection of sexual photos.

6. Apparently, all of the images depicted in Mr. Zelinsky's search are freely accessible to the public at no cost as a kind of "teaser invitation." Mr. Zelinsky did not advance his search into what could have been potentially more provocative scenes by accessing a pay for view mode, perhaps seeking more prurient or lewd type images, as might be the case with a pedophilic patient.

Mr. Zalinsky's SVR-20 coding scores, especially related to the psychosocial adjustment factors, do not suggest present or future potential for sexual acting-out. Moreover, he presents with a low psychopathy quotient that is positively correlated with non-sexual dangerousness.

Notwithstanding what has been stated above concerning internet viewing, Mr. Zelinsky has no record of sexual deviation. Mr. Zelinsky's psychological profile is representative of a passive, dependent, sad person with an arrested psychosocial developmental stage orientation, not a person who is a potential sex offender given to acting out. He does not appear to be on a continuum, as above stated, going from less dangerous sexual behavior (viewing pornography on the internet) to more serious sexual behavior, i.e. pedophilia. Mr. Zelinsky's psychological profile based on the psychological testing is inconsistent with a DSM-IV TR diagnosis of pedophilia. Mr. Zelinsky's offense or internet pornography is more in line with a "victimless" offense.

At this point, it seems important to analyze or to examine Mr. Zelinsky's behaviors leading to his arrest and occupational termination. His personality or psychological profile must be compared with the profile of a potential internet pornography offender. General psychological guidelines at this time for this disorder are consistent with those of a substance dependence patient. The DSM-V will directly address the psychological characteristics requisite for an internet pornography diagnosis. Until that time, these diagnoses follow the DSM-IV TR addiction model. His behavior is seen as an outgrowth of addiction. Mr. Zelinsky is not in need for a markedly increased exposure to pornography over the years. His journey into the world of pornography appears to have been exploratory and is not viewed as irreversibly compulsive. Mr. Zelinsky did not

engage in progressively more pornographic events; thus, there was no indication of psychological withdrawal when he terminated this viewing. Mr. Zelinsky, moreover, has not developed an increased tolerance and sought out more internet pornography as evidenced by his reluctance to proceed beyond the free stage of viewing. In other words, similar to a substance abuser, Mr. Zelinsky was not consuming larger and larger amounts over a longer period of time to establish the same effect.

For the purposes of this psychological assessment, Mr. Zelinsky's personality is not consistent with an addictive personality and, by inference, that of an internet pornography-addicted person or a sexually violent potential offender measured on the SVR-20 scale. This psychological test data, especially on the MMPI-2 and the BPI, are also not consistent with addiction patterning or an addictive personality. For example, as stated, his impulse expression scale measures the degree to which he has control over his impulses, including sexually driven impulses, and is half that of a sexual offender on the BPI example. This provides evidence that Mr. Zelinsky can control his impulses, thus conforming his behavior to the requirements of the law. Moving forward and prognostically, he has the potential to terminate illicit pornography, and this is a positive sign. Mr. Zelinsky, as stated above, is psychologically viewed as voyeuristically and vicariously driven by what seems like a temporary viewing compulsion, perhaps secondarily motivated by workplace boredom.

A corollary and second diagnosis made in this evaluation is avoidant personality, DSM-IV TR 301.82. Mr. Zelinsky is viewed as a low risk taker with regards to initiation of new social activity, even though his internet pornography venture is somewhat of a higher risk, although a vicarious one. Mr. Zelinsky's social isolation scale on the MMPI-2 confirms his tendency to be withdrawn and easily embarrassed. He holds a negative self concept and has low self esteem patterning, characteristics which make him even more isolated and alien from others. Mr. Zelinsky's BPI elevations on the social introversion scale and self depreciation scale confirm his tendency to avoid people and sequester himself. Mr. Zelinsky's avoidant personality is characterized by his reluctance to take some personal risks, such as living apart from his mother. He in fact views himself as

socially inept, somewhat personally unappealing, and inferior, especially in the presence of women. Mr. Zelinsky is somewhat restrained in his interaction with others and feels restraint in terms of intimate relationships because of a fear of being shamed or somehow ridiculed. Mr. Zelinsky thus, in order to protect his ego, has retreated from people. His avoidant personality diagnosis ties directly to his dependent personality to the extent that he has experienced rejection in his life; thus, in order to psychologically protect himself, as stated, he becomes isolated. His rejection by others, or potential rejection, reinforces his status as a lonely, isolated person who is driven to solitary acts such as viewing pornography on the internet. As offered above, Mr. Zelinsky does possess the ability to control his behaviors which hopefully will reduce the probability of his potential to recidivate. Long-term psychotherapy and deconditioning of his need to view pornography should be initiated.

Mr. Zelinsky's social withdrawal and personal loneliness have coalesced to drive him into this illicit world of internet pornography. The questions arise: Can this type of behavior be changed or treated? And, is he a danger to society? Mr. Zelinsky was very open to this examiner and to Mr. Martin, the NASA special agent, concerning what he has done and does not engage in rationalization, denial or projection as defense mechanisms. He fully accepts responsibility for his present legal conundrum. This is the most favorable prognostic sign that psychotherapy will be successful in changing his behavior. He has a desire to change; therefore, he can change and decondition himself away from the deleterious temptations offered via internet pornography sites. His psychological test results do not indicate that he will engage in more active, sexual acting-out offenses. Except this present violation of federal statute Title 18 USC, Section 2252(a)(4)(5), Mr. Zelinsky's offense falls into the general category of a victimless crime. Of course, for reasons already stated, he himself becomes the ultimate victim of this offense, and his sexual psychosocial developmental level remains frozen. Again, this is a therapeutic issue which ought to be addressed. As a member of the Santa Clara County Forensic Panel for 12 years, I was called upon to evaluate at least 50 to 75 mentally disordered sex offenders, presently labeled sexually violent predators. Mr. Zelinsky's behavior and psychodynamics are almost totally dissimilar from a dangerous

sexually-oriented offender. Nor does Mr. Zelinsky's misadventure into the world of internet pornography represent a stepping stone into more serious true victim transgression. He has verbalized his intent to terminate all future illicit access to internet or other forms of pornographic viewing.

## SUMMARY AND RECOMMENDATIONS

Mr. Mark Zelinsky, a 56-year-old male, was seen at the request of his attorney, Mr. Mike Nichols for a comprehensive psychodiagnostic evaluation at the Milpitas Counseling Center on October 10, 2007. This evaluation was completed in one full day of interviews and psychological assessment. Mr. Zelinsky has been charged with federal statute Title 18 USC, Section 2252(a)(4)(5) for accessing pornographic images on his computer while an employee at Ames Research Center where he was employed for the past 28 years as an engineer.

He was terminated and provided with early retirement because of his illegal activity. Mr. Zelinsky showed a sincere interest in the results of the psychological testing and mental status examination. This examiner has evaluated innumerable dangerous sexual offenders, including Mr. Zelinsky's case, many of whom were referred to Atascadero State Hospital for treatment, and has examined more passive (victimless) internet pornography offenders.

Mr. Zelinsky was given a wide range of psychological tests in order to evaluate his personality and help determine why this passive, congenial, intelligent, yet lonely person could engage in behavior deemed a violation of the federal law. As stated, Mr. Zelinsky was presented with a number of psychological tests in order to tap his veracity or lack thereof. These tests were designed to rule in or rule out the element of faking/malingering. The results of the psychological testing indicate that Mr. Zelinsky is not attempting to "fool" the test results, i.e. look more or less favorable psychologically. The validity scales on the MMPI-2 and the BPI are well within normal limits as is the SIMS test that verify his non-distortion. Thus, Mr. Zelinsky is not seen as attempting to

skew the results of the psychological testing to appear "mentally sick" or "mentally healthy."

During the psychological interview, Mr. Zelinsky was very contrite and honest concerning his status viz à viz the federal criminal charge against him. He did not use projection, minimization, or rationalization as defense mechanisms, and he accepts full responsibility for his transgression. Clearly, Mr. Zelinsky knows the difference between right and wrong and had a sincere motivation not to engage in future unlawful behavior. Mr. Zelinsky has two co-occurring and inter-related psychiatric diagnoses, i.e. dependent and avoidant personality. These diagnoses help explain why this intelligent yet sad, middle-aged man would engage in such risky behavior as internet pornography. The diagnostic impression of Mr. Zelinsky from the psychological tests and from the mental status interview indicate:

1. Mr. Zelinsky is seen as a lonely, isolated, disconnected and infantalized person.
2. Mr. Zelinsky has problems with everyday living including decision making.
3. Mr. Zelinsky has profound feelings of detachment and abandonment; hence, his life-long attachment to his mother.
4. He is seen psychosexually as arrested at the teenage stage.
5. Mr. Zelinsky avoids social interaction and tends to move away from people as opposed to towards people for increased interaction.
6. His avoidance of people protects his ego or self from the possibility of future rejection.

Mr. Zelinsky's psychological test profile is not seen as consistent with a sexual offender, or for that matter qualify as a pedophile using the DSM-IV TR, and he shows remorse and guilt for what he has done. In other words, Mr. Zelinsky is not taking these criminal charges lightly. He accepts total responsibility for his transgression as well as showing a sincere intent not to recidivate. His test scores do not suggest that he represents a future danger to society or that his pornographic-related action is a stepping stone into more serious criminal transgression. Mr. Zelinsky desires to not engage in future illegal pornographic viewing. This strong desire to change augers well for his future probable

law compliance. It is recommended that Mr. Zelinsky initiate a course of psychotherapy that will aid him with individuation characterized by:

1. Increasing his self image, self esteem, and self reliance.
2. Deconditioning his inappropriate inclination towards viewing unrealistic and immature electronically transmitted sexual images.
3. Focussing on Mr. Zelinsky's resocialization process as well as reduction of his loneliness patterning.

While there is no representative method to foretell the future with 100% certainty, it does appear that Mr. Zelinsky has a minimal probability to recidivate. Federal prison confinement for this first-time offender who accepts total responsibility for his unlawful action, has no prior arrest history, and has tested as non-violent, thus representing a minimal future danger, would seem to serve no useful end except retribution. A more treatment-oriented alternative inculcating psychotherapy with a long-term probationary status could be offered to this sincere, contrite, middle-aged man.

Sincerely,

*[signature]*

Dr. John C. Brady III
Clinical Psychologist, Forensic Examiner

JCB/ccg

# JOHN C. BRADY, II, Ph.D.
## Clinical Psychologist
### License No. PB4551

## BACKGROUND

John C. Brady, II, Ph.D., is a Diplomat of the American Board of Forensic Examiners whose forensic specialties include the assessment and clinical treatment of shoplifters and other criminal and personal injury cases. He is the Executive Director of the Milpitas (California) Forensic Center. Dr. Brady has been retained hundreds of times by both defense attorneys and prosecutors as an expert witness. For further information regarding his services or publications, he may be contacted by telephone (408) 263-5313 or Fax (408) 263-0349. Correspondence may be addressed to Dr. Brady at The Milpitas Forensic Center, 615 S. Main Street, Suite 8, Milpitas, CA 95035.

## EDUCATION

| | |
|---|---|
| 1983 - 1985 | Century University<br>Ph.D. Psychology |
| 1970 - 1971 | University of California, Berkeley<br>Doctor - Criminology |
| 1968 - 1969 | University of California, Berkeley<br>Masters - Criminology |
| 1964 - 1966 | Southern Illinois University Graduate School<br>M.A. Counseling |
| 1960 - 1964 | Southern Illinois University<br>B.A. Psychology |

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 1986 - Present | **Private Practice**: Milpitas, CA. Expert Witness testifying in forensic, workers' compensation, disability and personal injury cases.<br>**Forensic Examiner**: Santa Clara County (20 years experience with more than 400 cases including sex offenders, MDSO's, pedophilic offenders, etc.) |
| 1981 - 1985 | **Private Practice**: San Jose, CA. Practice included forensic, workers' compensation and criminal cases. |
| 1975 - 1977 | **Private Practice**: Psychology, Milpitas Counseling Center (owner)<br>**Lecturer in Psychology**: University of Maryland, European Division. During two year period taught psychology classes to the U.S. Armed Forces overseas. Attached to U.S. Army Hospital, Vicenza, Italy. |
| 1973 - 1974 | **Clinical Psychology Internship** - Highland General Hospital |
| 1971 - 1972 | **Clinical Psychology Internship** - San Francisco Veterans Hospital |

## CREDENTIALS AND PROFESSIONAL ASSOCIATIONS

California Community College, Teaching Credential, Psychology, Law Enforcement - 1974
California Licensed Clinical Psychologist, 1975
The American Psychology Association
California State Psychology Association
Santa Clara Psychology Association
Board Certified Forensic Examiner (BCFE)

## AWARDS

Scholarship, National Institute of Mental Health
References furnished upon request

## PUBLICATIONS

| | |
|---|---|
| Brady, J.C. | Substance Abuse and Treatment in Silicon Valley. A Cost Analysis Employee Benefit Plan Review, 1985. |
| Brady, J.C. | The High Price of Mental Health Services, Psychology Systems, 1987. |
| Brady, J.C. | Heroin Users Reflect Low Self-Concepts?, Psychology Systems, 1982. |
| Brady, J.C. | Big Bucks in the Abuse Clinics, Employee Benefit Plan Review, 1989. |
| Brady, J.C. | Evaluation of Semantic Differential Changes in Correctional Officer Attitudes, J. Correct Counseling, 1967. |
| Brady, J.C. and Williams, L. | What Controls the Controller, The Police Chief, 1978. |
| Brady, J.C. | Adolescents: Are They Treated Fairly? Psychology Systems, 1990. |
| Brady, J.C. | Drug Addicts, Are They Out of Control? Published by the Western Book/Journal Press, 1990. |
| Brady, J.C. | Doctoral Dissertation "Self Concept and Locus of Control Among a Group Institutionalized Drug Users." Published by the State of CA, 1972. |
| Brady, J.C. | Shoplifting: It's Not What You Think, 1999. |